Case 3:25-cv-00213   Document 21   Filed on 09/04/25 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
September 04, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | § | |
|---|---|---|
| | § | |
| IN RE BAFFIN BAY | § | CIVIL ACTION NO. 3:25-cv-00213 |
| | § | |
| | § | |

# OPINION AND ORDER

On July 9, 2025, this court sua sponte raised the question of whether venue in this limitation proceeding is proper in the Galveston Division. The parties have submitted their positions. *See* Dkts. 10–11, 15. Having reviewed the parties' filings, I will transfer this case to the Houston Division for the convenience of the parties and witnesses, and in the interest of justice.[1]

## BACKGROUND

Petitioners Kirby Inland Marine, LP, as owner of the *Baffin Bay*, and Kirby Corporation (collectively, "Kirby"), instituted this limitation proceeding on July 8, 2025. Claimant Justin Roth, a crew member of the *Baffin Bay*, alleges that he fell ill and had to disembark mid-voyage on March 24, 2025, in Lake Charles, Louisiana. A third-party transportation service arranged by Kirby picked Roth up at the dock in Lake Charles to transport him to the hospital. The vehicle crashed en route and Roth sustained serious injuries that rendered him a paraplegic.

On May 13, 2025, Roth filed a lawsuit against Kirby in the 190th Judicial District Court of Harris County, Texas, asserting claims under the Jones Act and general maritime law. On July 8, 2025, Kirby instituted this limitation proceeding in the Southern District of Texas—Galveston Division.

---

[1] An order transferring venue pursuant to Supplemental Rule F(9) is a non-dispositive matter for which a magistrate judge may rule by order. *See Arena IP, LLC v. New Eng. Patriots, LLC*, No. 4:23-cv-00428, 2023 WL 8711081, at *1 n.1 (S.D. Tex. Nov. 20, 2023) (explaining why "the better view" is that an order transferring venue is not dispositive under the analogous 28 U.S.C. § 1404(a)).

On July 9, 2025, this court ordered Kirby to explain this case's connection to the Galveston Division and how the court should weigh the private and public interest factors concerning venue transfer pursuant to Rule 16 of the Galveston Division Rules of Practice. On July 23, 2025, Kirby filed a memorandum arguing that the private and public interest factors favor venue in the Galveston Division. *See* Dkt. 10. On July 29, 2025, Roth responded, arguing that the Houston Division is the more convenient venue. *See* Dkt. 11. On August 6, 2025, Kirby submitted a reply brief in support of its position. *See* Dkt. 15.

## LEGAL STANDARD

Supplemental Rule F(9) governs the proper venue for a limitation proceeding. It provides that when, as here, a vessel has not been attached or arrested, "[t]he complaint shall be filed in any district . . . in which the owner has been sued with respect to any such claim." Fed. R. Civ. P. Supp. R. F(9).[2] After a vessel owner has filed a limitation complaint, the district court may transfer the case to any district "[f]or the convenience of parties and witnesses, [and] in the interest of justice." *Id.* "The Rule F(9) transfer provision is similar to and analyzed under the same framework as the general transfer provision found under 28 U.S.C. § 1404(a)." *In re Marquette Transp. Co. Gulf-Inland*, No. 3:18-cv-00074, 2018 WL 4443141, at *2 (S.D. Tex. Sept. 4, 2018); *see also Humble Oil & Refin. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963) (analogizing Rule F(9)'s predecessor, Admiralty Rule 54, to the transfer analysis under § 1404(a)).[3]

---

[2] Because Roth filed suit against Kirby in Harris County, the Southern District of Texas is the only place the limitation action could have been filed.

[3] Unlike § 1404(a), which contemplates a venue transfer between a "district or division," Rule F(9) does not refer to divisions at all, permitting by its text a venue transfer only "to any *district*." Fed. R. Civ. P. Supp. R. F(9) (emphasis added). Yet, when Rule F(9) was drafted, the intent was "to conform closely to the language of 28 U.S.C. §§ 1404(a) and 1406(a), though it retains the existing rule's provision for transfer to any district for convenience." Fed. R. Civ. P. Supp. R. F(9) advisory committee's note to 1966 implementation. It would be absurd to read Rule F(9) as both more liberal than § 1404(a) (which was the intent of the Advisory Committee's note)—by permitting transfer to any district, including one where venue would originally *not* have been proper—and yet still

As with § 1404, district courts enjoy "broad discretion in deciding whether to order a [venue] transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) ("*Volkswagen II*") (quotation omitted). In determining whether to transfer venue, district courts consider "a number of private and public interest factors, none of which are given dispositive weight." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law." *Id.*

A motion to transfer venue should be granted when "the movant demonstrates that the transferee venue is clearly more convenient." *Volkswagen II*, 545 F.3d at 315; *see also Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) ("[T]he standard [for venue transfer based on convenience] is not met by showing one forum is more likely than not to be more convenient, but instead the party [seeking transfer] must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.").

---

more restrictive, by prohibiting transfer between divisions even where a party has shown that a different division is clearly more convenient. In implementing the Supplemental Rules, the Advisory Committee was clear that they "are not to be construed as limiting or impairing the traditional power of a district court, exercising the admiralty and maritime jurisdiction, to adapt its procedures and its remedies in the individual case, consistently with these rules, to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. Supp. R. A advisory committee note to 1966 implementation. Given the broad discretion that district courts have always enjoyed in deciding whether to transfer venue, I am confident that this court retains the power to transfer within divisions of the same district in addition to venue transfers between districts.

## ANALYSIS

To determine whether transfer is appropriate under Rule F(9), I must assess the four private interest factors and the four public interest factors.

### A.  PRIVATE INTEREST FACTORS

#### 1.  *Relative Ease of Access to Sources of Proof*

The first private interest factor concerns the location of documents and physical evidence relating to the case. *See Volkswagen II*, 545 F.3d at 316. Kirby argues that because some of Roth's medical records and some of the physical evidence are in Louisiana, which is not convenient to Houston or Galveston, "the relative access to proof is neutral." *See* Dkt. 10 at 7. Roth counters that his treating physicians and thus most of his medical records are at TIRR Memorial Hermann, which is less than six miles from the Houston federal courthouse. *See* Dkt. 11 at 5.

The Fifth Circuit recently explained: "The question is *relative* ease of access, not *absolute* ease of access. That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (citation modified). "When the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis." *Id.* (citation modified).

What matters most here is that Kirby identifies no evidence in the Galveston Division. There is indisputably some evidence located in Houston. Because "there is absolutely no documentary or physical evidence currently available for inspection in the Galveston Division . . . , this factor slightly favors transfer to the Houston Division." *In re Orion Marine Constr., Inc.*, No. 3:20-cv-00309, 2020 WL 8083679, at *4 (S.D. Tex. Dec. 21, 2020); *see also Hebert v. Wade*, No. 3:13-cv-00076, 2013 WL 5551037, at *3 (S.D. Tex. Oct. 7, 2013) (When "neither party has identified any potential sources of proof in the Galveston Division, Houston's relatively easier access to potential documentary evidence favors transfer.").

### 2. *Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses*

"The second private interest factor examines the availability of compulsory process over witnesses." *Orion Marine*, 2020 WL 8083679, at *4. In considering this factor, it is important to remember that district courts have authority to compel non-party witnesses "to attend a trial, hearing, or deposition" that is conducted "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A).

Kirby contends "the physicians who treated Roth, the Railcrew driver, and the police and emergency personnel who responded to the crash *likely* reside in Louisiana." Dkt. 10 at 8 (emphasis added). Yet, the record before me does not indicate where these witnesses live in Louisiana, if at all, or whether their residence is within 100 miles of either Houston or Galveston. For his part, Roth acknowledges that his treating physicians at TIRR are "within the subpoena range of both the Houston and Galveston divisions." Dkt. 11 at 6. Because "it has not been alleged or shown that any witness would be unwilling to testify" or is outside the range of compulsory process for either Houston or Galveston, this factor is neutral. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 631 (5th Cir. 2022) (quotation omitted).

### 3. *Cost of Attendance for Willing Witnesses*

"The third private interest factor, which is probably the single most important factor in the transfer analysis, considers the cost of attendance for willing witnesses." *Orion Marine*, 2020 WL 8083679, at *4 (quotation omitted). "The inconvenience to witnesses increases with the additional distance to be traveled, including additional travel time, meal, lodging expenses, and time away from their regular employment. The Court must also consider the personal costs associated with being away from work, family, and community." *Sandbox Logistics*, No. 3:16-cv-12, 2016 WL 4400312, at *5 (S.D. Tex. Aug. 17, 2016) (citation modified).

5

Kirby argues that "although [its] headquarters are in Houston, Kirby's employees and agents are willing to travel to Galveston." Dkt. 10 at 8. If Kirby wants to make its employees and agents travel to Galveston, that is Kirby's prerogative. But in what may be the understatement of the year, Kirby also argues that "attending proceedings in Galveston should impose no material financial or personal costs" on Roth because he "lives in Brazoria County—a county within the Galveston Division." *Id.* at 9. I cannot respond to this argument better than Roth:

> Twisting physics, geography and common sense, Kirby somehow argues that this factor favors the Galveston Division. It does not. . . . Roth's mother's house is in Pearland, less than 2,000 feet from Harris County and about 17 ½ miles and a 25-minute drive from the Bob Casey Federal Courthouse in Houston . . . .
>
> . . . .
>
> [A]s Kirby knows, Mr. Roth's injuries have left him a paraplegic. For him to attend trial in Galveston would require him to make arrangements to drive an hour or more, each way, to the Courthouse. Or, alternatively, for him to stay at a hotel in Galveston and incur the expense and discomfort that comes with a hotel stay for a disabled person such as himself. It would be much more convenient, less costly, and frankly less physically taxing for him to have this trial in Houston rather than Galveston.
>
> Tellingly, besides Mr. Roth and his mother, Kirby has not identified a single other witness located in the Galveston Division. While Mr. Roth's mother's house is technically located within the Galveston Division, her home is much closer to the Bob Casey Federal Courthouse in Houston than the Galveston Courthouse as identified above. This factor favors the Houston Division.

Dkt. 11 at 6–7.

Kirby's response to this powerful argument is that it "would support a request by Roth's attorneys to seek permission for Roth to testify remotely, regardless of whether this case proceeds in Houston or Galveston." Dkt. 15 at 4. Kirby posits that "there is no risk of prejudice to Roth for not appearing in person because limitation actions are tried to the Court." *Id.* Kirby cites no case law in support of its argument that this "single most important factor" can be neutralized by the party opposing transfer volunteering its opponent to appear remotely.

6

Tellingly, Kirby has not volunteered itself to appear remotely, nor would this court permit a remote trial. Whether before a judge or a jury, parties have an equal right to appear live at trial. Accordingly, this factor heavily favors transfer to Houston.

### 4. *Other Practical Problems*

The fourth private interest factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203. Roth argues that proceeding in Galveston would necessarily be more expensive than Houston because "the lawyers for both parties (and their staff) would need to travel to Galveston" from Houston, where all their offices are located. Dkt. 11 at 8. The Fifth Circuit has expressly rejected this argument, holding that there is "no reason why the location of counsel should be considered under the fourth private-interest factor." *In re Chamber of Com. of U.S.*, 105 F.4th 297, 306 (5th Cir. 2024) ("When the location of counsel is brought up in a context where transfer would make litigating the case more or less convenient for the attorneys, it is irrelevant to consider—and thus improper to consider—because it does not affect the convenience of the parties."); *In re Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003) (quotation omitted) (The "'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue."). This factor is thus neutral.

## B. PUBLIC INTEREST FACTORS

### 1. *Administrative Difficulties Flowing from Court Congestion*

The first public interest factor asks, "not whether transfer will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Hillestad v. LLOG Expl. Co.*, No. 3:17-cv-00341, 2018 WL 4938708, at *7 (S.D. Tex. Sept. 20, 2018) (citation modified). Kirby argues this factor favors retaining the case in Galveston because the "Galveston Division's lighter criminal docket allows it to resolve civil matters more quickly." Dkt. 10 at 5 (quoting *Sandbox Logistics*, 2016 WL 4400312, at *7). Roth does not address this factor directly. Thus, this factor weighs against transfer.

### 2. *Local Interest in Having Localized Interest Decided at Home*

The local interest factor analyzes the "factual connection with the events of this case." *Volkswagen I*, 371 F.3d at 206. "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Orion Marine*, 2020 WL 8083679, at *6 (quotation omitted); *see also Bruck*, 30 F.4th at 435 ("The second public interest factor, which focuses on the local interest in having localized interests decided at home, 'most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit.'").

In this case, the acts giving rise to the accident at issue occurred in Louisiana. Houston, however, is where Roth spent several months in the hospital recovering from that accident and received most of his medical care. Because the Galveston Division has no factual connection whatsoever with the events of this case, this factor weighs slightly in favor of transfer to the Houston Division.

### 3. *Familiarity of the Forum with the Law that Will Govern the Case*

This court and the Houston Division are quite familiar with both Texas and maritime law. This factor is neutral.

### 4. *Avoiding Conflicts Problems or Application of Foreign Law*

The last factor asks whether transferring the case would raise any "unnecessary problems in conflict of laws, or in the application of foreign law." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016) (quotation omitted). Both this court and the Houston Division "are equally capable of addressing any conflict of law or foreign law issues that may arise." *In re Trinity Tugs*, No. 3:24-cv-00327, 2025 WL 729714, at *7 (S.D. Tex. Mar. 7, 2025). Thus, this factor is neutral.

## CONCLUSION

Overall, the private and public interest factors weigh in favor of transferring this case to the Houston Division. As explained, two private interest factors weigh

in favor of transfer and two are neutral. One public interest factor weighs against transfer, one weighs in favor of transfer, and two are neutral. The scales are tipped by the "single most important factor," the cost of attendance for willing witnesses. Although Kirby wants to try this case in Galveston, Roth would be greatly inconvenienced to attend trial in Galveston, whereas no one would be inconvenienced by a trial in Houston. Thus, Roth has satisfied his burden of establishing that the Houston Division is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. Accordingly, this case will be transferred to the Houston Division for the convenience of the parties and witnesses and in the interest of justice.

SIGNED this 4th day of September 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE